# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:01CR201 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE RIOS-SANCHEZ, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Jose Rios-Sanchez (Defendant) has filed a timely § 2255 motion alleging ineffective assistance of trial counsel and direct appeal counsel. After initial review, I deny the motion and dismiss it with prejudice.[1]

## *Background*

The Defendant admitted when he entered his guilty plea in 2001 that he agreed to transport drugs from Washington to Arkansas in exchange for $1,500.00. The Nebraska State Patrol officers stopped the Defendant for expired license plates. While conducting a search, the officers discovered seven pounds of methamphetamine in a cooler inside the vehicle and 1.3 grams of methamphetamine in Defendant's sock. He

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

pled guilty to possession with intent to deliver 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1) thus triggering a statutory mandatory minimum sentence of ten years unless he was eligible for the safety-valve.

The Defendant failed to appear at his sentencing hearing scheduled for January 23, 2002. He evaded capture for over fourteen years before he was finally located living in Wyoming. Substantially varying downward[2] due to Defendant's poor health, I sentenced Rios-Sanchez to a statutory minimum term of 120 months' imprisonment. I also found that he was not eligible for the safety-valve or a minor role adjustment.

The Defendant appealed alleging that I erred in failing to provide the Defendant with a safety-valve adjustment. The Court of Appeals disagreed and affirmed. *United States v. Rios -Sanchez*, 731 F. App'x 558, 560 (8th Cir. 2018). The Court of Appeals held that I erred in finding the Defendant was categorically ineligible for consideration under the safety-valve because he did not provide any information to the government before the first sentencing hearing in 2002, but that the error was harmless. The Court of Appeals ruled that the Defendant's written safety-valve statement and his testimony at the second sentencing hearing in 2017 demonstrated that he did not truthfully proffer all information about his involvement in the offense and, therefore, did not satisfy his burden of showing he was entitled to relief.

### Law on Ineffective Assistance of Counsel

The Defendant asserts that defense counsel was ineffective. Therefore, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must

---

[2] The Guideline range was 151 to 188 months in prison.

establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[3] and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[4] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688, 694.)

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

---

[3] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

[4] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Nix v. Whiteside,* 475 U.S. 157, 175 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland* "). But, it must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

*Claims*

The Defendant first argues that his counsel[5] was ineffective because the lawyer failed to file a motion to suppress the fruits of the search of the vehicle inasmuch as the Defendant did not consent to the search. Both predicates of this argument are factually untrue.

A motion to suppress was filed but the Defendant after consulting his counsel agreed that it should be withdrawn. At the time of his plea, the Defendant told the Magistrate Judge that he agreed that the suppression motion should not be pursued after discussing the matter with his counsel:

> THE COURT: Mr. Potter, have you discussed with the Defendant any possible defenses that he may have to the charge?
>
> MR. POTTER: I have, Your Honor.
>
> THE COURT: Mr. Rios-Sanchez, is that correct?
>
> MR. RIOS-SANCHEZ: (By the Interpreter) Yes.
>
> MR. POTTER: Your Honor, for the Court, I had filed a motion to suppress, and we did withdraw that motion to suppress when we entered into the plea bargain.
>
> THE COURT: And do you understand that, Mr. Rios-Sanchez? I asked you earlier if you understood that your plea of guilty waived those challenges to the evidence, and you had filed a motion to suppress in this case, but by pleading guilty, you withdraw, essentially, your motion to suppress in this case and you give up any challenge to that evidence, do you understand that?
>
> MR. RIOS-SANCHEZ: (By the Interpreter) Yes.

---

[5] Mr. Potter was his lawyer at this time.

(Filing No. 26 at CM/ECF p. 23).

Moreover, the Defendant admitted under oath that he had consented to the search of his vehicle:

> THE COURT: Now, I'm going to ask the Government's attorney to state the factual basis for your plea. In stating the factual basis, the Government's attorney will tell the Court generally what facts the Government would expect to prove by evidence beyond a reasonable doubt at your trial in order to convict you on the charge against you in this case. Please listen carefully, and then I'll have some questions of you. Ms. Bunjer.
>
> MS. BUNJER: Your Honor, on August 10th of this year, Mr. Jose Rios-Sanchez was stopped in Dawson County, mile marker 220 of Interstate 80 for expired tags on his truck. *Trooper Fabey then requested consent to search from Mr. Rios-Sanchez, which was granted*, and located in basically the back seat area of the truck in a cooler was seven pounds of methamphetamine.
>
> THE COURT: Now, Mr. Rios-Sanchez, did you hear what Ms. Bunjer said?
>
> MR. RIOS-SANCHEZ: (By the Interpreter) Yes.
>
> THE COURT: Do you agree that the Government can prove those facts beyond a reasonable doubt if this went to trial?
>
> MR. RIOS-SANCHEZ: (By the Interpreter) Yes.
>
> THE COURT: And did you do those things which Ms. Bunjer said in her statement?
>
> MR. RIOS-SANCHEZ: (By the Interpreter) Yes.

(*Id.* at CM/ECF pp. 25-26.) (Emphasis added.)

In short, the first claim fails because it is factually untrue. The files and records leave no doubt about it.

Second, the Defendant argues that his lawyer[6] was ineffective at sentencing because he did not call the Defendant's wife to testify that the Defendant did not use drugs and the lawyer failed to provide unspecified "independent evidence" to support his claim that he was entitled to a minor role reduction and a safety-valve adjustment. This claim is frivolous.

The Court of Appeals accurately described the Defendant's testimony in support of his safety-valve and minor role adjustment this way:

> Rios-Sanchez provided inconsistent statements regarding his involvement in the offense. He provided one version that he drove to the drug dealer's house to pick up the drugs and another version where the drug dealer brought the drugs to his house. Rios-Sanchez did not provide specifics on when and where the delivery was supposed to take place. The district court found Rios-Sanchez's explanation that the baggie of methamphetamine found in his sock was a sample for the drug dealer lacked credibility. After reviewing the entire record, we find there is sufficient evidence supporting the district court's findings regarding the lack of completeness and truthfulness of Rios-Sanchez's information about the offense.

(Filing No. 90 at CM/ECF p. 4.) (Unpublished Court of Appeals opinion.)

---

[6] Mr. Vanderslice, an Assistant Federal Public Defender, represented the Defendant at sentencing.

The Defendant's testimony was not credible and it was inconsistent and incomplete. I heard it and did not believe it. Nothing the lawyer could have done would have made the Defendant's testimony credible.[7]

I add the following. The Defendant's physical possession of 1.3 grams of methamphetamine in his sock strongly suggested that he knew more about the drug trade than he let on[8] and that is true whether he used drugs or not. The testimony was also incredible. Keeping drugs in your sock when you are delivering pounds of packaged methamphetamine to a buyer-dealer and claiming the drugs in the sock are a "sample" for the buyer-dealer is, to use the vernacular, nuts. Clearly, if any sample would have been taken, the buyer-dealer would have taken it from the packaged pounds and not from the sock of the Defendant. Moreover, 1.3 grams is far more than what would have been needed for a sample.[9]

The third argument, which I reject, is essentially that (a) I erred in holding that the Defendant was categorically ineligible for the safety-valve, (b) I did not make an explicit factual finding regarding whether his testimony warranted safety-valve relief and (c) counsel should have raised my failure to make an explicit factual ruling on direct appeal. The Defendant fails to recognize, however, that I took testimony and

_____

[7] Since I found the Defendant ineligible for the safety-valve but varied downward to the statutory minimum, the claimed role adjustment even if granted could not have made a difference as I could not go below ten years.

[8] The Defendant testified that "I didn't know what type of drugs they were." (Filing 88 at CM/ECF p. 22.) Yet he had 1.3 grams of this "unknown" drug in his sock.

[9] I have handled hundreds of meth cases. 1.3 grams of meth is not insignificant. As the Court of Appeals described the evidence in one case, "a typical dosage amount of methamphetamine is 'in less than a gram quantity'" and "a half gram of methamphetamine" is a "[u]ser-type quantit[y]." *United States v. Slagg*, 651 F.3d 832, 847 (8th Cir. 2011).

evidence on the mitigating role question, explicitly ruled on that question, and by so doing effectively ruled factually on the safety-valve question as well. The factual issues on the role and safety-valve questions were identical. The Court of Appeals realized that and stated:

> The district court's error in finding Rios-Sanchez was ineligible for consideration under the safety valve was harmless. Rios-Sanchez's written safety-valve statement and his testimony at the sentencing hearing demonstrate he did not truthfully proffer all information about his involvement in the offense and, therefore, did not satisfy his burden of showing he was . . . entitled to relief under the safety valve. The judgment is affirmed.

(Filing No. 90 at CM/ECF pp. 4-5.) (Unpublished Court of Appeals opinion.)

Finally, a defendant cannot appeal an adverse ruling on a § 2255 motion unless he or she is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that the defendant is not entitled to a certificate of appealability.

IT IS ORDERED that:

1.      The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 95) is denied and dismissed with prejudice.

2.      A separate judgment will be entered.

3.      No certificate of ability has been or will be issued.

DATED this 26th day of November, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge